**FORCHEIMER v. YOUNG et al.**
No. 6902.

District Court, E. D. Michigan, S. D.
March 5, 1946.

Butzel, Eaman, Long, Gust & Kennedy, of Detroit, Mich., and Leo M. Brown, of Mobile, Ala., for plaintiff.

Robert S. Marx, Carl Runge and Lawrence I. Levi, all of Detroit, Mich., and Sperry & Weinberg, of New York City, for intervening plaintiffs.

Cook, Smith, Jacobs & Beake, of Detroit, Mich., for defendants.

LEDERLE, District Judge.

### Findings of Fact.

1. This minority stockholder's derivative class action against L. A. Young Spring & Wire Corporation, hereinafter called the corporation, and its officers, is presently before the court on petitions for allowance of fees and reimbursement of expenses requested by the following applicants in the following amounts:

|  | Fees | Expenses |
|---|---|---|
| Isaac C. Forcheimer, plaintiff.... | $ 9,897.50 | $ 446.27 |
| Butzel, Eaman, Long, Gust & Kennedy and Leo M. Brown, attorneys for plaintiff ........ | $55,000.00 | $ 516.34 |
| Robert S. Marx, Carl Runge, Lawrence I. Levi and Sperry & Weinberg, attorneys for intervening plaintiffs .................... | $15,000.00 | $ 175.26 |
| Totals ........................ | $79,897.50 | $1137.87 |

Accountants' requested fees, approximating $5200, have already been paid voluntarily by the corporation.

2. In 1930, plaintiff, holding 125 out of 400,000 outstanding shares of the corporation, noticed on corporate reports what appeared to be irregularities in the matter of loans by the corporation to its officers and employees. In 1934, plaintiff retained Leo M. Brown, an attorney of Mobile, Alabama, and Butzel, Eaman, Long, Gust & Kennedy, a law firm in Detroit Michigan, in connection therewith. These attorneys have been his counsel throughout this litigation. These claimed irregularities as to corporate loans subsequently became the subject matter of the complaint herein.

3. This action was instituted on April 11, 1935. After being called several times by this court in an effort to get the case at issue and tried, it became at issue as to the original parties on December 20, 1938, when a motion to dismiss, filed on December 7, 1938, by a defendant who had not previously answered, was heard and granted. Thereafter, the case was active, through a series of interlocutory and supplemental proceedings, including the joinder of additional defendants, the filing of three supplemental complaints upon discovery of other claimed irregularities, and discovery proceedings.

4. The irregularities ultimately involved in this action were personal borrowings from the corporation by L. A. Young and other defendants, aggregating approximately one million dollars, on which Young and others had fraudulently obtained corporate releases and surrender of valuable collateral security, and that L. A. Young had illegally obtained another million dollars by fraudulent contracts, patent licenses on patents issued in his name but which were actually corporate property, a further personal loan of $750,000, exorbitant salary and expense allowances, illegal payment of L. A. Young's personal obligations, improper royalty and bonus payments, and illegal loan and rebate payments from steel companies in connection with purchase of the corporation's steel supply. Although trial of the case was never completed, from the record and proceedings up to the time of settlement and dismissal, it appeared that these complaints were well founded.

5. Prior to the time the case became at issue as to parties who had been added as defendants, the intervening plaintiffs, Lucille K. Levy et al., holders of 575 shares of corporate stock, retained Sperry & Weinberg, a law firm of New York City, and, subsequently, Robert S. Marx, Carl Runge and Lawrence I. Levi, legal associates of Detroit, Michigan, in an effort to get the litigation disposed of. On December 6, 1939, these intervening plaintiffs were granted leave to intervene. Thereafter, counsel for these intervenors participated in all phases of the proceeding.

6. After several adjournments at the request of counsel, the trial was commenced on March 19, 1940. During the second day of trial, the case was adjourned to permit renewal of settlement negotiations, which had been carried on intermittently prior thereto. On May 8, 1940, a proposed settlement agreement was filed, and a hearing date thereon fixed by order to show cause directed to stockholders. After notice to stockholders, a hearing was held thereon in open court on June 28, 1940, at which the settlement as proposed was approved as being beneficial to and for the best interests of all stockholders. This approval was incorporated into a decree entered June 29, 1940.

7. This settlement decree provided for the payment to the corporation by L. A. Young of $275,000 cash, the transfer to the corporation of several valuable patents, and the cancellation of royalty agreements between Young and the corporation, upon consummation of which settlement the case would be dismissed with prejudice and the defendants released of further liability to the corporation upon the matters covered by this action. This decree also provided that the sum of $275,000 to be paid by Young to the corporation was "subject to the payment out of said sum of such allowances to plaintiff and his counsel and to counsel for intervenors and to the accountants as the court by further order shall determine," and, further, that jurisdiction should be retained for the purpose of fixing such compensation and expenses upon petitions and hearings thereon in this court.

8. Thereupon, a group of stockholders, headed by Benjamin E. Cohen, who had previously been denied leave to intervene, took an appeal to the Circuit Court of Appeals, which court, under opinion appearing as Cohen v. Young, 6 Cir., 127 F.2d 721, returned the case to the trial court for the presentation of further evidence directed specifically to the solvency of L. A. Young, settlement having been predicated upon his insolvency. Upon subsequent hearing, the insolvency of L. A. Young was proven, and the settlement again approved. Stockholders Cohen et al. again appealed to the Circuit Court of Appeals, and, upon affirmance of the second approval of the settlement (Forcheimer v. Young, 6 Cir., 135 F.2d 625), they applied for certiorari. This application was denied on February 28, 1944, 321 U.S. 778, 64 S.Ct. 619, 88 L.Ed. 1071.

9. In addition to the tangible benefits accruing to the corporation as a result of this stockholders' action, as outlined in finding 7, this action and the settlement which has been consummated have brought the corporate officers and directors to a realization of their fiduciary duties as managers of a corporation, and deterred them from continuing their program of operating the corporation as a family concern.

10. At the outset, in considering separately the three applications for allowances, all requests for reimbursement of out-of-pocket expenses are to be allowed by concession of the defendant. In the case of expenses of counsel, defendant concedes that the same were necessary and reasonable. The concession as to plaintiff's expenditures in the amount of $446.27 is in the nature of a compromise offer to save the time of court and counsel which would be spent in further controversy over this small item.

11. The application of Isaac C. Forcheimer, plaintiff, for fees is composed of two subdivisions, one item of $6,000 being based upon an estimate of 1500 hours time spent in connection with this matter, for which he requests compensation at the rate of $4.00 per hour, and a second item of $3897.50, being the difference between the amount for which he could have sold his 125 shares of stock in December, 1935, when he wanted to do so, and the amount for which he sold them in February, 1945, subsequent to consummation of settlement herein. He retained his stock upon advice of his counsel that if he sold his 125 shares he would lose his standing as plaintiff in this action. His 400 hours of estimated time began in 1930, when he first noticed on corporate reports the matter of borrowings of officers from the corporation, and consisted of examination of records, correspondence, reports to corporate stockholders, market reports, transactions of the corporation and its officers, and in numerous conferences with his counsel, plus two railway trips to Detroit. A great part of his time was spent prior to institution of this suit, and was not connected with or in contemplation of this suit.

12. Butzel, Eaman, Long, Gust & Kennedy carried the laboring oar in the investigation, preparation, prosecution and disposition of this action and the development of legal theories thereof, as attorneys for plaintiff. Leo M. Brown, with a now deceased associate, was the forwarding attorney, and, after some initial investigation, he acted for the most part as intermediary between plaintiff and his Detroit counsel. Plaintiff's Detroit counsel introduced time records showing 1600 hours recorded time spent on this matter, and they estimated that total time consumed amounted at least to 2300 hours, and plaintiff's Alabama counsel scheduled 300 hours time spent. A small fraction of these attorneys' time was spent in court appearances. The balance was devoted to investigation, conferences, legal research and briefing and negotiating the settlement. All of the services were rendered in connection with or in contemplation of this action. Defendant has conceded that the value of these services is

between $40,000 and $42,500. The sum of $42,500 appears to be ample compensation.

13. Robert S. Marx, Carl Runge and Lawrence I. Levi and Sperry & Weinberg, as attorneys for intervening plaintiffs, have requested an allowance of $15,000, based upon an estimated 500 hours time spent in connection with this matter. Of this time, a small fraction was spent in court appearances. The balance was devoted to investigation, legal research, briefing and conferences. All of the services were rendered in connection with or in contemplation of this action. After intervention herein, these attorneys were of material assistance in the prosecution of this case and in negotiating, consummating and sustaining the compromise herein. Defendant has conceded that the value of these services is $10,000. This appears to be ample compensation.

14. Having in mind the interest of stockholders in this corporation, the extent and nature of the services of the applicants for allowances for services, the necessity therefor, the peril of corporate assets, the labor and trouble involved, the results achieved, the character and importance of the matters, the learning, skill and experience required and exercised, the responsibility undertaken, the contingency or absoluteness of fees, and the concession of defendant as to the value of these services, the reasonable value of the services rendered by Leo M. Brown and Butzel, Eaman, Long, Gust & Kennedy, as attorneys for plaintiff, is $42,500, and the reasonable value of the services rendered by Sperry & Weinberg and Robert S. Marx, Carl Runge and Lawrence I. Levi, as attorneys for intervening plaintiffs, is $10,000.

### Conclusions of Law.

1. A compromise decree in a minority stockholder's derivative action, requiring the corporation out of a fund recovered to pay such allowances as the court by further order shall determine, does not impose an obligation upon the corporation to pay fees other than according to established rules of law and equity, nor relieve the court of its duty to make a determination and allowance according to such rules.

2. There is no basis according to established rules of law and equity upon which a court can allow to a minority stockholder who prosecutes a stockholder's derivative action, compensation for his time spent in investigation of corporate affairs and in conferring with his counsel, particularly as to time spent prior to such action and not in contemplation thereof.

3. There is no basis according to established rules of law and equity upon which a court can allow to a minority stockholder who prosecutes a stockholder's derivative action, the amount of a claimed loss from not selling all his shares of stock in the corporation during the pendency of the action, which loss he computes as the difference between the amount for which he could have sold his shares at one time during the pendency of the action and the amount for which he sold his shares subsequent to settlement of the action.

4. In a minority stockholder's derivative action, counsel for plaintiff and intervening plaintiffs are compensable from a fund recovered for the reasonable value of services necessarily rendered in recovering assets of the corporation in peril, according to the interest of stockholders, the extent and nature of the services, the necessity therefor, the peril of corporate assets, the labor and trouble involved, the results achieved, the character and importance of the matters, the learning, skill and experience required and exercised, the responsibility undertaken, the contingency or absoluteness of fees, and, in addition thereto, if the corporation makes a concession as to the reasonable value of such services, such concession should be given consideration. See: Annotation of authorities, 152 A.L.R. 909.

5. In a minority stockholder's derivative action, when the corporation consents to the allowance, out of a fund recovered, of expenses incurred in connection with the action, such expenses are properly allowable by the court.

6. Accordingly, an order is being entered simultaneously herewith allowing to the attorneys for the plaintiff the sum of $42,500 as legal fees, plus $516.34 as expenses, to the attorneys for intervening plaintiffs the sum of $10,000 as legal fees, and $175.26 as expenses, and to the plaintiff the sum of $446.27 as expenses, and disallowing the balance of the requests contained in the three applications under consideration.

### Final Order on Fee Applications.

In accordance with findings of fact and conclusions of law on fee applications filed simultaneously herewith, it is hereby ordered that the L. A. Young Spring & Wire

Corporation, defendant, shall pay to the following applicants the following sums of money set opposite their respective names:

Isaac C. Forcheimer, expenses............ $ 446.27
Butzel, Eaman, Long, Gust & Kennedy and Leo M. Brown
    expenses ....................... $ 516.34
    fees ......................... $42,500.00
                                       $43,016.34

Robert S. Marx, Carl Runge, Lawrence I. Levi and Sperry & Weinberg
    expenses ....................... $ 175.26
    fees ......................... $10,000.00
                                       $10,175.26

It is further ordered that the balance of the requests for fees contained in the three fee applications filed herein by the above named parties are hereby disallowed.